```
 1  ADAM L. BRAVERMAN
    United States Attorney
 2  BRUCE C. SMITH
    Assistant U.S. Attorney
 3  California State Bar No. 078225
    Federal Office Building
 4  880 Front Street, Room 6293
    San Diego, California 92101-8893
 5  Telephone: (619) 546-8266
    E-mail: bruce.smith@usdoj.gov
 6
    Attorneys for Plaintiff
 7  United States of America
```

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | Case No. '18CV0482 BAS JLB |
|---|---|
| Plaintiff, | COMPLAINT FOR FORFEITURE |
| v. | |
| $40,000.00 IN U.S. CURRENCY, | |
| Defendant. | |

By way of complaint against the defendant $40,000.00 IN U.S. CURRENCY ("$40,000 in currency"), plaintiff UNITED STATES OF AMERICA alleges:

1. This Court has jurisdiction over this action by virtue of the provisions of Title 28, United States Code, Section 1355(a) and Title 21, United States Code, Section 881(a)(6), because the defendant $40,000 in currency constitutes money furnished or intended to be furnished in exchange for a controlled substance, or proceeds traceable to an exchange for controlled substances in violation of Chapter 13 of Title 21, United States Code.

2. Venue is proper in this district pursuant to
//

Title 28, United States Code, Section 1395 because the defendant $40,000 in currency was found in this district.

3. On November 2, 2017, in the Southern District of California, at the San Diego International Airport ("SDIA"), members of the San Diego Integrated Narcotics Task Force ("NTF") Commercial Interdiction Unit were on duty, seeking to intercept and seize controlled substances and proceeds from the sales of controlled substances passing though the airport.

A. The Task Force officers ("TFO") were trained and experienced, and knew persons engaged in the commercial interstate distribution of controlled substances frequently used SDIA and the aircraft that arrived and departed there to distribute controlled substances throughout the United States.

B. The trained and experienced Task Force officers knew persons engaged in the commercial interstate distribution of controlled substances frequently used SDIA and the aircraft that arrived and departed there to transport drug sales proceeds and funds to be used to purchase drugs in and out of San Diego. Those proceeds and funds were usually in the form of United States currency.

C. The trained and experienced Task Force officers knew persons engaged in the commercial interstate distribution of controlled substances frequently used couriers to transport controlled substances, drug sales proceeds, and funds used to purchase drugs in and out of San Diego. SDIA and the aircraft that arrived and departed

2

there were relied upon as a means of sending and receiving such couriers.

4. On or about November 2, 2017, NTF Task Force officers and Drug Enforcement Administration ("DEA") agents assigned to SDIA learned that RODRIGO MARQUEZ ("MARQUEZ") was traveling from Charlotte Douglas International Airport ("CLT") in Charlotte, North Carolina to SDIA aboard American Airlines flight 540.

    A. MARQUEZ was traveling on a one-way ticket, purchased with cash, less than 24 hours prior to his flight.

    B. MARQUEZ, a United States citizen and resident of Tijuana, Baja California, Mexico, did not purchase a round trip ticket for his travel from San Diego to North Carolina and back.

    C. MARQUEZ was traveling with no checked luggage.

    D. The TFOs and DEA agents had specialized training and were experienced in investigating illegal drug and drug currency couriers. They knew the purchase of a cross-country, one-way airline flight ticket a day or two before departure is unusual, and can be indicative the traveler is an illegal drug or drug currency courier.

    E. The TFOs and DEA agents knew the general traveling public purchases round trip airline tickets weeks or even months in advance of the scheduled departure date. Advance purchase of round trip airline tickets results in lower fares for the traveler. Purchasing a one-way airline ticket even a week in advance of departure all but guarantees one will pay the highest fare.

3

F. The TFOs and DEA agents had specialized training and were experienced in investigating illegal drug and drug currency couriers. They knew illegal drug and drug currency couriers oftentimes do not know when drugs or currency will be available for transport until the last minute. The nature of illegal drug trafficking, and its uncertainties, often compel couriers and their employers to purchase airline tickets close to the departure date.

G. The trained and experienced TFOs and DEA agents knew San Diego was a primary source region for controlled substances cultivated and manufactured on the west coast of the United States ("west coast"), Latin America, and elsewhere.

H. The trained and experienced TFOs and DEA agents knew controlled substances cultivated and manufactured on the west coast, in Latin America, and elsewhere were sent and distributed for resale from source regions such as San Diego to all points north and east within the United States. In their experience, the Charlotte, North Carolina region was a known destination market for controlled substances.

5. The Task Force officers reviewed official United States, state, and local criminal history databases, and learned MARQUEZ suffered a conviction for burglary in California in 2005.

6. On November 2, 2017, just before 4:50 p.m. in SDIA Terminal Two, the TFOs and DEA agents prepared for the arrival of American Airlines flight 540 and passenger MARQUEZ.
//

...

A. At approximately 4:50 p.m., shortly after American Airlines flight 540 landed, the TFOs and DEA agents, armed with a physical description and photo of MARQUEZ, identified him as he exited the jet way from Gate 31.

B. The agents noted MARQUEZ was carrying a black leather shoulder strap carry-on bag.

C. As MARQUEZ walked away from the gate, TFO Santana and TFO Loochkartt, walked up to MARQUEZ, identified themselves as law enforcement officers, and showed MARQUEZ their respective law enforcement credentials.

D. TFO Santana assured MARQUEZ he was not in trouble, and asked if the officers could speak with him about his travels.

E. MARQUEZ was cooperative and stopped to speak with TFO Santana.

F. MARQUEZ told TFO Santana he just returned to San Diego from Charlotte, North Carolina where he sold a 2017 Mercedes Benz vehicle to an unnamed buyer.

G. TFO Santana explained to MARQUEZ, among other things, the SDIA NTF interdiction team wanted to be sure MARQUEZ was not traveling with contraband such as illegal drugs, weapons, or large amounts of currency.

H. MARQUEZ told TFO Santana he had approximately $40,000.00 in cash in his carry-on bag.

I. MARQUEZ told TFO Santana the $40,000.00 in his carry-on bag was the proceeds from the sale of the 2017 Mercedes Benz vehicle to the unnamed buyer.

//

J. MARQUEZ told TFO Santana he had no documentation memorializing the sale of the 2017 Mercedes Benz vehicle.

7. MARQUEZ told TFO Santana the officers had his permission to search the interior spaces and contents of his carry-on bag.

8. MARQUEZ accepted TFO Santana's invitation to conduct the search of his carry-on bag away from the crowds of SDIA passengers, in the privacy of the nearby SDIA NTF office.

A. MARQUEZ told TFO Santana he would feel more comfortable in a private area.

B. MARQUEZ walked with TFO Santana and TFO Loochkartt to the SDIA NTF office.

C. As MARQUEZ walked with TFO Santana, MARQUEZ said he made arrangements, and shipped the 2017 Mercedes Benz vehicle from San Diego to the buyer in North Carolina.

9. Upon arriving at the SDIA NTF office, MARQUEZ placed his carry-on bag on a table.

A. MARQUEZ showed TFO Loochkartt where the $40,000.00 in cash was concealed in his carry-on bag.

10. MARQUEZ told TFO Santana about his itinerary and the events surrounding his sale of the 2017 Mercedes Benz vehicle.

A. MARQUEZ said on October 31, 2017, MARQUEZ booked a one-way flight for that same day from SDIA to CLT with Frontier Airlines.

B. MARQUEZ said on November 1, 2017, in Charlotte, North Carolina, he sold the 2017 Mercedes Benz to an unnamed buyer for $42,000.00.

//

       C. MARQUEZ described the 2017 Mercedes Benz as a white MCLA250 model.

       D. MARQUEZ told TFO Santana he did not know the buyer's name, had no contact information for the buyer, and had no bill of sale for the transaction.

11. The TFOs and DEA agents had specialized training and were experienced in investigating illegal drug traffickers and drug currency couriers, and had encountered other drug sales currency couriers in the past who insisted the currency they were carrying represented proceeds from the sales of vehicles; it was a common fictitious story.

       A. MARQUEZ was unable to produce any documentation, electronic or otherwise, memorializing the purchase, marketing, shipment from California to North Carolina, or sale of any vehicle.

       B. MARQUEZ was unable to produce any form of verification or corroboration in support of his story that he sold a vehicle of any kind while in Charlotte, North Carolina.

12. MARQUEZ abruptly amended his story about the source of the currency he was carrying.

       A. MARQUEZ told TFO Santana $25,000.00 of the money he was carrying was paid to him by the cousin of "Vicente."

       B. MARQUEZ explained that Vicente owed MARQUEZ $30,000.00.

       C. MARQUEZ told TFO Santana an unnamed cousin of Vicente lived in Charlotte, North Carolina.

       D. MARQUEZ told TFO Santana while MARQUEZ was in

//

Charlotte, North Carolina, Vicente's cousin paid MARQUEZ $25,000.00 of the $30,000.00 owed to MARQUEZ by Vicente.

    E. MARQUEZ did not know Vicente's last name or his contact information, nor did he know the name of Vicente's cousin in Charlotte, North Carolina.

13. Acting on MARQUEZ'S expression of consent to search the carry-on bag, TFO Loochkartt examined and inventoried its contents.

    A. TFO Loochkartt discovered a bundle of U.S. currency inside MARQUEZ'S carry-on bag.

    B. The currency discovered in MARQUEZ'S carry-on bag consisted of 400 $100.00 bills.

    C. The $40,000.00 discovered in the carry-on bag is the defendant $40,000 in currency.

14. Among MARQUEZ'S possessions were three (3) receipts from two (2) different Wells Fargo Bank branches, both dated November 1, 2017, the day before MARQUEZ flew from CLT to SDIA.

    A. The first Wells Fargo Bank receipt was time-stamped 12:24 p.m., and memorialized the deposit of $4,000.00 in $20.00 bills into a bank account number ending in "8104."

    B. The second Well Fargo Bank receipt was time-stamped 1:00 p.m., and memorialized the deposit of $7,800.00 in currency into a bank account number ending in "7247."

    C. The third Wells Fargo Bank receipt was time-stamped 1:06 p.m., and memorialized the deposit of $5,500.00 in $20.00 bills into a bank account number ending in "8104."

//

D. The three (3) transactions involved the deposit of $17,300.00 in $20.00 bills at multiple Wells Fargo Bank branches in the city of Charlotte, North Carolina, and all conducted in less than an hour.

15. The TFOs and DEA agents had specialized training and were experienced in investigating illegal drug traffickers and drug currency couriers. They knew illegal street drug sales were virtually always conducted as an exchange of drugs for currency.

A. The most common denomination used in illegal street drug transactions was the $20.00 bill.

B. Only hours before his flight, MARQUEZ submitted, or caused to be submitted, at least $17,300.00 in $20.00 bills, within the period of less than an hour, at multiple Wells Fargo Bank branches in the city of Charlotte, North Carolina.

16. The TFOs and DEA agents had specialized training and were experienced in investigating illegal drug traffickers and drug currency couriers. They knew illegal drug traffickers and drug currency couriers sometimes deposited their drug-contaminated currency at a bank and later withdraw "clean" currency; currency not contaminated by controlled substances.

A. Illegal drug traffickers and drug currency couriers knew law enforcement frequently used drug detection canines to examine currency encountered in the field.

B. By exchanging their drug-contaminated currency for clean currency from a bank, the illegal drug traffickers

and drug currency couriers hoped to defeat law enforcement's drug detection canines.

17. The defendant $40,000 in currency was seized for forfeiture by the DEA as currency constituting proceeds of the purchase(s) of controlled substances, and money possessed with the intent to be furnished in exchange for controlled substances.

18. On or about December 18, 2017, MARQUEZ signed under penalty of perjury, and caused to be submitted to the DEA, a document entitled "Petition For Remission Or Mitigation Of Forfeiture" ("Petition") relative to the defendant $40,000 in currency.

    A. In the Petition, MARQUEZ affirmatively states under penalty of perjury the defendant $40,000 in currency constituted proceeds from the sale of a 2014 Mercedes Benz CLA automobile and a 2014 Jeep Wrangler SUV.

19. MARQUEZ attached exhibits or supporting documents to the Petition, signed under penalty of perjury and submitted, or caused to be submitted, to the DEA.

20. Some of the exhibits or supporting documents attached by MARQUEZ to the Petition purported to memorialize the sale by MARQUEZ on November 1, 2017 of a 2014 Mercedes Benz automobile to "Juan V. Perez", a resident of North Carolina.

    A. MARQUEZ, under penalty of perjury, represented to the DEA that MARQUEZ sold the 2014 Mercedes Benz automobile to Juan V. Perez for $25,000.00.

21. The representations made by MARQUEZ to the DEA in the Petition under penalty of perjury relative to the alleged

sale of the 2014 Mercedes Benz automobile to Juan V. Perez for $25,000.00 were fraudulent.

   A. The particular 2014 Mercedes Benz automobile identified to the DEA by MARQUEZ was a "salvaged" title vehicle, and had an odometer reading of approximately 100,000 miles.

   B. The fair market value of the particular 2014 Mercedes Benz automobile identified to the DEA by MARQUEZ was many thousands of dollars less than the $25,000.00 selling price stated by MARQUEZ.

   C. As late as February 6, 2018, the official North Carolina State vehicle registration system had no records of the 2014 Mercedes Benz automobile identified to the DEA by MARQUEZ as a vehicle registered in that state.

   D. Official United States Government border crossing records documented a number of crossings in and out of Mexico during the months of December 2017 and January 2018 through ports of entry in the Southern District of California.

   E. The State of North Carolina vehicle registration system records, and the border crossing records of the United States Government demonstrate that the particular 2014 Mercedes Benz automobile identified to the DEA by MARQUEZ was never sold or delivered to a buyer in North Carolina.

   22. Some of the exhibits or supporting documents attached by MARQUEZ to the Petition purported to memorialize the sale by MARQUEZ on October 27, 2017 of a 2014 Jeep SUV to "Gustavo Martinez", a resident of Tijuana, Baja California Mexico, and
//

renter of a commercial post office box in San Ysidro, California.

    A. MARQUEZ, under penalty of perjury, represented to the DEA that MARQUEZ sold the 2014 Jeep SUV to Gustavo Martinez for $15,000.00.

23. The representations made by MARQUEZ to the DEA in the Petition under penalty of perjury relative to the alleged sale of the 2014 Jeep SUV to Gustavo Martinez for $15,000.00 were fraudulent.

    A. The particular 2014 Jeep SUV identified to the DEA by MARQUEZ was a "salvaged" title vehicle.

    B. The fair market value of the particular 2014 Jeep SUV identified to the DEA by MARQUEZ was thousands of dollars less than the $15,000.00 selling price stated by MARQUEZ.

    C. Official United States Government border crossing records documented numerous and frequent crossings in and out of Mexico during the months of December 2017, January 2018, and February 2018 through ports of entry in the Southern District of California by the purported buyer, Gustavo Martinez.

    D. During the months of December 2017, January 2018, and February 2018, Gustavo Marquez always entered the United States from Mexico as the driver or passenger of vehicles other than the 2014 Jeep SUV.

24. The defendant $40,000 in currency constitutes money furnished or intended to be furnished in exchange for a

//

controlled substance, in violation of Chapter 13, Title 21, United States Code.

25. Alternatively, the defendant $40,000 in currency constitutes proceeds of, or proceeds traceable to, an exchange for a controlled substance, in violation of Chapter 13, Title 21, United States Code.

26. Alternatively, the defendant $40,000 in currency was used or intended to be used to facilitate an exchange for a controlled substance, in violation of Chapter 13, Title 21, United States Code.

27. As a result of the foregoing, the defendant $40,000 in currency is liable to condemnation and to forfeiture to the United States for its use in accordance with Title 21, United States Code, §881(a)(6).

28. The defendant $40,000 in currency is presently deposited within the jurisdiction of this Court.

WHEREFORE, the United States prays that due process issue to enforce the forfeiture of the defendant $40,000 in currency, and that due notice be given to all interested parties to appear and show cause why said forfeiture should not be declared.

DATED: March 6, 2018

ADAM L. BRAVERMAN
United States Attorney

s/ Bruce C. Smith
BRUCE C. SMITH
Assistant U.S. Attorney

13

≋JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
United States of America

## DEFENDANTS
$40,000.00 in U.S. Currency

**(b)** County of Residence of First Listed Plaintiff _____
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
AUSA Bruce C. Smith, Phone: (619) 546-8266
USAO, 880 Front Street, Room 6293, San Diego, CA 92101-8893

Attorneys (If Known)

'18CV0482 BAS JLB

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- [X] 1 U.S. Government Plaintiff
- [ ] 2 U.S. Government Defendant
- [ ] 3 Federal Question (U.S. Government Not a Party)
- [ ] 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability / ☐ 365 Personal Injury - Product Liability | [X] 625 Drug Related Seizure of Property 21 USC 881 |  | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander / ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine / **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability / ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle / ☐ 371 Truth in Lending | ☐ 690 Other |  | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability / ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury / ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 195 Contract Product Liability |  | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise |  | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting / ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations / **Habeas Corpus:** |  | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare / ☐ 530 General |  | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment / ☐ 535 Death Penalty | **IMMIGRATION** |  | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other / ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application |  | ☐ 950 Constitutionality of State Statutes |
|  | ☐ 440 Other Civil Rights / ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - Alien Detainee |  |  |
|  | ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions |  |  |

## V. ORIGIN (Place an "X" in One Box Only)

- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from another district (specify)
- [ ] 6 Multidistrict Litigation
- [ ] 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
21 U.S.C. Section 881
Brief description of cause:
Narcotics trafficking

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes [X] No

## VIII. RELATED CASE(S) IF ANY
(See instructions): JUDGE _____ DOCKET NUMBER _____

DATE: 03/06/2018
SIGNATURE OF ATTORNEY OF RECORD: s/ Bruce C. Smith

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

VERIFICATION

I, Alberto Santana, state and declare as follows:

1. I am a Task Force Officer, assigned to a San Diego Integrated Narcotics Task Force, Team 8, and am one of the task force officers assigned to this investigation.

2. I have read the foregoing complaint and know its contents.

3. The facts set forth in the complaint are based upon my own knowledge or were facts furnished to me by other United States federal, state, or local law enforcement personnel, civilian witnesses, or other official Government sources.

Based on this information, I believe the allegations in the complaint to be true.

I declare under penalty of perjury that the foregoing is true and correct, to the best of my knowledge and belief.

Executed on March 3, 2018.

ALBERTO SANTANA, TFO
NTF TEAM 8